17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ORIGINAL**

UNITED STATES OF AMERICA,

v.

D-1 NORWOOD JEWELL,

Defendant.

Case:2:19-cr-20146
Judge: Cohn, Avern
MJ: Grand, David R.
Filed: 03-18-2019 At 09:08 AM
INFO USA V. JEWELL (DA)

Violation: **Conspiracy to Violate the Labor Management Relations Act** (18 U.S.C. § 371)

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## General Allegations

At times relevant to this Information:

1. The Labor Management Relations Act, commonly known as the Taft Hartley Act, prohibited employers and persons acting in the interest of employers from paying, lending, or delivering, or agreeing to pay, lend, or deliver, any money or other thing of value to any officer or employee of a labor organization representing its employees.

2. The Labor Management Relations Act also prohibited any officer or employee of a labor organization representing the employees of an employer from

receiving, accepting, or agreeing to receive or accept, any money or other thing of value from that employer or from any person acting in the interest of that employer.

**Relevant Organizations**

3. Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA." FCA was an employer in an industry affecting interstate commerce and subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

4. The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-managerial employees employed by FCA at numerous locations in Michigan and across the United States. The UAW was a labor organization subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

5. The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Relations Act, 29 U.S.C. § 186(c)(9). The

stated purpose of the NTC was to provide for the education, training, and retraining of workers.

6. The governing body of the NTC was known as the Joint Activities Board. The Vice President of Employee Relations of FCA and the Vice President of the Chrysler Department of the UAW served as the Chairmen of the NTC Joint Activities Board. Based on his position in the UAW, between June 2014 and December 2016, **Norwood Jewell** served as one of the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from FCA and the UAW.

**Collective Bargaining Agreements between FCA and the UAW**

7. Approximately every four years FCA and the UAW engaged in national negotiations resulting in a collective bargaining agreement that set wages, attendance policies, profit sharing, ratification bonuses, holidays, and other working conditions for FCA employees represented by the UAW.

8. In and after July 2015, UAW and FCA held national negotiation sessions that resulted in collective bargaining agreements covering tens of thousands of FCA employees represented by the UAW.

**The Defendants**

9. **Norwood Jewell (D-1)** was a UAW officer who served as a Vice President of the UAW, the most senior official in the UAW Chrysler Department from 2014 through 2016. As the most senior UAW official in the Chrysler Department, **Norwood Jewell** was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2015, **Norwood Jewell** served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA.

10. Nancy A. Johnson was a UAW employee who served as a senior official in the UAW Chrysler Department from 2014 through 2016. As a senior UAW official in the Chrysler Department, Nancy A. Johnson was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2015, Nancy A. Johnson served as a member of the UAW national negotiating committee in an administrative role responsible for the collective bargaining agreements between the UAW and FCA.

11. Keith Mickens was a UAW employee who served as a senior official in the UAW Chrysler Department from 2010 through June of 2014. As a senior

UAW official in the Chrysler Department, Keith Mickens was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011, Keith Mickens served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA.

12. Virdell King was a UAW employee who served as a senior official in the UAW Chrysler Department. As a senior UAW official in the Chrysler Department, Virdell King was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011 (under General Holiefield), Virdell King served as a member of the UAW national negotiating committee responsible for negotiating the terms of the collective bargaining agreements between the UAW and FCA. In 2014, Virdell King was reassigned into an administrative role by **Norwood Jewell** and did not participate in the actual negotiating process between the UAW and FCA.

13. Alphons Iacobelli was the FCA Vice President for Employee Relations and a person acting in the interest of employer FCA from 2008 through June of 2015. As the FCA Vice President for Employee Relations, Alphons

Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW. As the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead representative for labor relations and managed FCA's relationship with the UAW. Alphons Iacobelli was the senior FCA official responsible for resolving disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

14. Jerome Durden was a Financial Analyst in FCA's Corporate Accounting Department. From 2008 through 2015, Jerome Durden was the Controller of the NTC and served as the secretary of the NTC Joint Activities Board.

15. Michael Brown was employed as a Director for Employee Relations at FCA from 2009 through 2016. During that time, Michael Brown was personally involved in the negotiation and administration of the national collective bargaining agreements between FCA and the UAW and had authority to sign letters and agreements on behalf of FCA with the UAW. Michael Brown also represented FCA as a Co-Director of the NTC.

16. All dates in this Information are alleged to have occurred on or about the stated dates.

## COUNT ONE

**(18 U.S.C. § 371 – Conspiracy to Violate the Labor Management Relations Act)**

**D-1 NORWOOD JEWELL**

1. Paragraphs 1 through 16 of the General Allegations are incorporated by reference here.

2. Between in or before 2009 through 2016, within the Eastern District of Michigan, Southern Division, and elsewhere, **Norwood Jewell** and other individuals and entities, known and unknown, did knowingly and voluntarily conspire to violate the Labor Management Relations Act. The objects of this conspiracy were:

(a) that one or more persons acting in the interest of employer FCA would willfully pay and deliver—and agree to pay and deliver—things of value to officers and employees of the UAW, the labor organization representing its employees, using the NTC with the intent to benefit persons who they knew were not permitted to receive the things of value, in violation of Title 29, United States Code, Section 186(a)(2), (d)(1); and

(b) that officers and employees of the UAW would willfully request, receive, and accept—and agree to receive and accept—things of value from employer FCA and one or more persons acting in the interest of FCA, using

the NTC with the intent to benefit themselves and other persons who they knew were not permitted to receive the things of value, in violation of Title 29, United State Code, Section 186(b)(1), (d)(1).

3. From in or before 2009 through 2016, FCA executives conspired with one another, with FCA, with officials at the UAW, and with the UAW, to violate the Labor Management Relations Act. From 2009 through 2014, General Holiefield, while serving as a Vice President of the UAW in charge of the Chrysler Department, knowingly created and/or joined the conspiracy whereby officers and employees of the UAW would willfully request, receive, and accept money and things of value from persons acting in the interest of FCA. During the Holiefield leadership years, a "culture of corruption" was continued and enhanced between Holiefield, his staff, and executives of FCA to violate the Labor Management Relations Act. Holiefield retired from the UAW in 2014, leaving several co-conspirators in place at their previous positions in the UAW.

4. In 2014, **Norwood Jewell** was elected Vice President of the UAW, and he was assigned to the Chrysler Department. **Norwood Jewell** had no previous experience with the Chrysler Department, nor was he familiar with any of the co-conspirators from the Holiefield era who had conspired with executives from FCA to violate the Labor Management Relations Act.

5. From 2014 through 2016, while serving as a Vice President of the UAW in charge of the Chrysler Department, **Norwood Jewell** knowingly joined the conspiracy whereby officers and employees of the UAW would willfully request, receive, and accept things of value worth over $40,000 from persons acting in the interest of FCA by failing to apportion the amounts attributable to the UAW, the NTC, and to **Norwood Jewell** personally. The things of value included travel, lodging, and meals.

6. Over the course of the conspiracy, FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and other FCA executives acting in the interest of employer FCA, unlawfully paid and delivered more than $1,000 in prohibited payments and things of value, directly and indirectly, to UAW Vice President **Norwood Jewell**, to senior UAW official Nancy A. Johnson, to senior UAW official Virdell King, to senior UAW official Keith Mickens, and to other UAW officials.

7. Defendant **Norwood Jewell**, then a representative, officer, and Vice President of the UAW, knowingly and voluntarily joined this conspiracy to receive things of value from persons acting in the interest of FCA. **Norwood Jewell** joined knowing that the prohibited payments of things of value, which were delivered through and concealed by the NTC, were willfully made with the intent to benefit

the UAW, **Norwood Jewell**, senior UAW official Nancy A. Johnson, senior UAW official Virdell King, Keith Mickens, and other senior UAW officials, who were not permitted to receive things of value.

8. FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used NTC bank accounts and NTC credit card accounts to conceal prohibited payments and things of value paid and delivered to senior UAW officials.

9. FCA provided the funding for the NTC. From 2009 to 2015, FCA made annual transfers to the NTC of between approximately $13 million and approximately $31 million per year. During that time, FCA executives, including FCA Vice President Alphons Iacobelli and FCA Financial Analyst Jerome Durden controlled the finances and spending of the NTC. After Alphons Iacobelli and Jerome Durden left FCA in June 2015, other FCA executives continued the conspiracy on through 2016 by, among other things, approving illegal payments of things of value to UAW officials and the UAW, while the FCA executives were acting in the interest of FCA.

10. In and after 2012, FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden and other FCA executives encouraged and authorized senior UAW officials to use the NTC credit cards to pay for personal

purchases and personal expenditures in violation of the Labor Management Relations Actions Act.

**Overt Acts**

11. One or more members of the conspiracy completed one or more of the following acts to effect the object of the conspiracy:

12. In June 2014, **Norwood Jewell** became the Vice President of the UAW's Chrysler Department. As Vice President, **Norwood Jewell** was the most senior official in the UAW Chrysler Department.

13. In June 2014, the UAW President approved the appointment of Nancy A. Johnson as the Top Administrative Assistant to the Vice President for the UAW Chrysler Department. As the Top Administrative Assistant, Nancy A. Johnson was the second most senior official in the UAW Chrysler Department.

14. In and after 2012, NTC credit cards were given to senior UAW officials, including Nancy A. Johnson, Virdell King, Keith Mickens, and others. **Norwood Jewell** received an NTC credit card in 2014.

15. From 2014 through 2016, in instances set forth below, **Norwood Jewell** made purchases on his NTC credit card for the UAW's benefit by failing to account and/or apportion expenditures charged to the NTC account that in fact should have been apportioned to the UAW or that should not have been charged.

16. On August 6, 2014, **Norwood Jewell** held an open house for senior UAW officials at the offices of the NTC in Warren, Michigan. While the open house included a tour of the NTC facility, **Norwood Jewell** did not apportion any of the thousands of dollars in costs associated with the event to the UAW and instead directed payment of all of the costs of the event to be paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

17. On January 9, 2015, **Norwood Jewell** spent $7,569.55 at LG's Prime Steakhouse in Palm Springs, California using his NTC credit card. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

18. In January 2015, **Norwood Jewell** spent $1,267.79 at Indian Canyons Golf Resort in Palm Springs, California. These expenditures were paid by the NTC using FCA funds, in violation of the Labor Management relations Act.

19. On January 18, 2015, Nancy A. Johnson, spent $4,587.04 for a meal at LG's Prime Steak House in Palm Springs, California. **Norwood Jewell** approved Nancy A. Johnson to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

20. On January 23, 2015, a UAW official spent $3,372.74 for a meal at

Spencer's Restaurant in Palm Springs, California. **Norwood Jewell** approved the UAW official to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

21. On January 24, 2015, a UAW official spent $6,200.05 for a meal at Palm Springs Steak & Chop Restaurant in Palm Springs, California. **Norwood Jewell** approved the UAW official to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

22. On January 28, 2015, a UAW official spent $4,147.74 for a meal at Melvyn's Restaurant in Palm Springs, California. **Norwood Jewell** approved the UAW official to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

23. On July 14, 2015, a UAW official spent $7,694.07 at the London Chop House in Detroit, Michigan. **Norwood Jewell** approved that the UAW official was to pay for such meals using his NTC credit card. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

24. On July 14, 2015, Nancy A. Johnson spent $800.30 at the London Chop House in Detroit, Michigan. **Norwood Jewell** approved that Nancy A. Johnson was to pay for such meals using her NTC credit card. The expenditure was

paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

25. On August 12, 2015, **Norwood Jewell** held another open house for senior UAW officials at the offices of the NTC in Warren, Michigan. While the open house included a tour of the facility, **Norwood Jewell** did not apportion any of the thousands of dollars in costs associated with the event to the UAW and instead directed payment of all of the costs of the event to be paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

26. On September 17, 2015, Nancy A. Johnson spent $6,912.81 at the London Chop House in Detroit, Michigan. **Norwood Jewell** approved that Nancy A. Johnson was to pay for such meals using her NTC credit card. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

27. In January and February 2016, **Norwood Jewell** spent $6,681.12 at Indian Canyons Golf Resort in Palm Springs, California. These expenditures were paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

28. On February 3, 2016, a UAW official spent $6,081.04 for a meal at Melvyn's Restaurant in Palm Springs, California. **Norwood Jewell** approved the

UAW official to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

29. On February 12, 2016, a UAW official spent $3,583.47 for a meal at Palm Springs Steak & Chop Restaurant in Palm Springs, California. **Norwood Jewell** approved the UAW official to spend the money at the restaurant. The meal was paid by the NTC using FCA funds, in violation of the Labor Management Relations Act.

30. **Norwood Jewell** used the NTC credit card, and he approved UAW officials to use their NTC credit cards, to make over $40,000 in purchases for himself, senior UAW officials, and other UAW members. **Norwood Jewell** made these purchases and approved other UAW officials to make similar purchases knowing that said purchases would not be apportioned to the UAW for payment. Instead, **Norwood Jewell** approved the use of NTC credit cards for payments using FCA funds, in violation of the Labor Management Relations Act.

All in violation of Title 18, United States Code, Section 371.

MATTHEW SCHNEIDER
United States Attorney

David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit

Date: March 18, 2019

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cove** |
|---|---|

Case:2:19-cr-20146
Judge: Cohn, Avern
MJ: Grand, David R.
Filed: 03-18-2019 At 09:08 AM
INFO USA V. JEWELL (DA)

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complet**

| **Companion Case Information** | **Companion Case Number:** 17-CR-20406 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Paul D. Borman |
| ☒ **Yes** ☐ **No** | **AUSA's Initials:** [signature] |

**Case Title:** USA v. D-1 Norwood Jewell

**County where offense occurred :** Wayne

**Check One:** ☒**Felony** ☐**Misdemeanor** ☐**Petty**

____Indictment/ ✓ Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ______________ **Judge:** ______________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 18, 2019
Date

DAVID A. GARDEY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone:313-226-9591
Fax: 313-226-3413
E-Mail address: David.Gardey@usdoj.gov
Attorney Bar #: P48990

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.